Peter Urhausen Esq. SBN 160392
Sean Conley Esq. SBN 130814
GIBBONS & CONLEY
3480 Buskirk Ave., Suite 200
Pleasant Hill, CA 94523
T: 925.932.3600
F: 925.932.1623

Attorney for Defendant CITY OF COTATI, MICHAEL
      PARISH, MARK LANDMAN, JOHN MOORE,
      JOHN DELLOSSO, WENDY SKILLMAN,
      SUSAN HARVEY, DAMIEN O'BID, VICKI
      PARKER

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE ELIZABETH ALDERMAN,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF COTATI, MICHAEL PARISH,<br>MARK LANDMAN, JOHN MOORE,<br>JOHN DELLOSSO, WENDY SKILLMAN,<br>SUSAN HARVEY, DAMIEN O'BID,<br>VICKI PARKER.<br><br>        Defendants. | Case No. 19-cv-05844-KAW<br>Assigned to: Magistrate Judge Kandis A. Westmore<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR MORE DEFINITE STATEMENT OF COMPLAINT**<br><br>**Date:**     December 12, 2019<br>**Time:**     1:30 p.m.<br>**Courtroom:**  TBD<br><br>Action Filed: September 19, 2019 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on the above date, time, and courtroom of the above-entitled Court, or as soon thereafter as may be heard, Defendants City of Cotati, Michael Parish, Mark Landman, John Moore, John DellOsso, Wendy Skillman, Susan Harvey, Damien O'Bid, and Vicki Parker will move the Court for a motion to strike and/or dismiss Plaintiff's claims, or for a more definite statement, on the following issues:

1. No claim is stated against each of the Defendants individually, and all of the Defendants collectively, on any cause of action.

2. No claim is stated against each of the Defendants individually, and all of the Defendants collectively, on the first cause of action, entitled Violation of Right to Freedom of Speech.

3. No cause of action is stated against Defendant City of Cotati on the second cause of action, entitled *Monell* Claim.

4. No cause of action is stated against any of the Defendants individually, and against all of the Defendants collectively, on the third cause of action, entitled Violation of the Americans with Disabilities Act.

5. The allegations of paragraphs 18-59 and 70 are immaterial and impertinent.

6. The individual Defendants are entitled to qualified immunity.

7. The request for punitive damages should be dismissed or clarified.

This motion is based upon the grounds set forth in the motion and the memorandum of points and authorities attached hereto, namely that Plaintiff has no standing and/or has stated no cause of action with respect to each of the causes of action against each of the Defendants, and/or that the allegations are vague and/or immaterial.

///

///

///

///

///

i

1       This motion will be based upon this notice of motion, the points and authorities filed herewith,

2   the pleadings and papers on file in this action, as well as any further material properly presented to

3   the Court in this matter.

4

5

6   Dated:  November 1, 2019                    GIBBONS & CONLEY

7

8                               By:  /s/ *Peter Urhausen*

                                Peter Urhausen, Esq.

9                                   Sean Conley, Esq.

                                Attorney for Defendants CITY OF COTATI

10                                  MICHAEL PARISH, MARK LANDMAN, JOHN

                                MOORE, JOHN DELLOSSO, WENDY

11                                  SKILLMAN, SUSAN HARVEY, DAMIEN

                                O'BID, VICKI PARKER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u> ................................................... 1

<u>STATEMENT OF ISSUES TO BE DECIDED</u> ............................................................. 1

<u>BACKGROUND</u> ..................................................................................................... 2

   Allegations of the Complaint ............................................................................. 2

<u>LEGAL ARGUMENT</u> .............................................................................................. 5

     1.  All of the Allegations about Events Occurring before September 19, 2017 Should be Stricken ....................................................................................... 5

     2.  Plaintiff Fails to State a Cause of Action for Violation of the First Amendment ..................................................................................................... 6

     3.  The Claims against Defendants Skillman, Harvey, O'Bid and Parker Should be Dismissed or Clarified ...................................................................... 8

     4.  The *Monell* Cause of Action Should be Dismissed or Clarified ....................... 8

     5.  The Claims for Violation under the Americans with Disabilities Act Should be Dismissed or Clarified ................................................................... 10

     6.  The Claims Should be Dismissed on the Basis of Qualified Immunity .......... 12

     7.  The Claim for Exemplary Damages should be Dismissed ............................. 13

<u>CONCLUSION</u> ...................................................................................................... 14

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR
MORE DEFINITE STATEMENT FOR COMPLAINT

Case No. 19-cv-05844-KAW

## <u>TABLE OF AUTHORITIES</u>

<u>CASES:</u>

*Ashcroft v. Iqbal*
(2009) 556 U.S. 662 ................................................................ 8, 9

*Barnes v. Gorman*
(2002) 536 U.S. 181 ................................................................ 13

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544 ................................................................ 8

*Bull v. San Francisco*
(9th Cir. 2010) 595 F.3d 964 ................................................... 9

*Castro v. City. Of Los Angeles*
(9th Cir. 2015) 797 F.3d 654 ................................................... 13

*Chandler v. State Farm*
(9th Cir. 2010) 598 F.3d 1115 ................................................. 1

*City of Newport v. Fact Concerts, Inc.*
(1981) 453 U.S. 247, 271 ........................................................ 13

*Collins v. San Diego*
(9th Cir. 1988) 841 F.2d 337 ................................................... 9

*Colson v. Grohman*
(5th Cir. 1999) 174 F.3d 498 ................................................... 7

*Hernandez v. Tulare*
(9th Cir. 2012) 666 F.3d 631 ................................................... 8

*King v. Hubbard*
(E.D. Cal. 2009) 2009 WL 4052721 at *7 ................................ 12

*Klamut v. California Highway Patrol*
(N.D. Cal. 2015) 2015 WL 9024479 at *6 ............................... 11

*Maldonado v. Harris*
(9th Cir. 2014) 370 F.3d 954 ................................................... 2, 5

*McGary v. Portland*
(9th Cir. 2004) 386 F.3d 1259 ................................................. 10

*Mulligan v. Nichols*
(9th Cir. 2016) 835 F.3d 983 ................................................... 6, 8

iv

*Naucke v. City of Park Hills*
(8th Cir. 2002) 284 F.3d 923 ........................................................................... 7

*Navarro v. Block*
(9th Cir. 1996) 72 F.3d 712 ........................................................................... 13

*Opperwall v. State Farm Fire and Casualty Company*
(N.D. Cal. 2018) 2018 WL 1243085, *5 ........................................................ 13

*Pearson v. Callahan*
(2009) 555 U.S. 223 ...................................................................................... 12

*Starr v. Baca*
(9th Cir. 2011) 652 F.3d 1202 .......................................................................... 8

*St. Louis v. Praprotnik*
(1988) 485 U.S. 112 ........................................................................................ 9

*Thompson v. Los Angeles*
(9th Cir. 1989) 885 F.2d 1439 ......................................................................... 9

*United States v. Georgia*
(2006) 546 U.S. 151 ...................................................................................... 12

*White v. Pauly*
(2(2017) 137 S.Ct. 548, 551 .......................................................................... 12

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR
MORE DEFINITE STATEMENT FOR COMPLAINT

Case No. 19-cv-05844-KAW

**CODES/STATUTES:**

Federal Rules of Civil Procedure Rule 12(b)(1) ................................................................. 1
Federal Rules of Civil Procedure Rule 12(b)(6) ................................................................. 1
Federal Rules of Civil Procedure Rule 12(c) ..................................................................... 1
Federal Rules of Civil Procedure Rule 12(f).................................................................... 1
Government Code §818 ........................................................................................ 13
42 U.S.C. section 1983........................................................................................ 2, 5
42 U.S.C. section 12132........................................................................................ 10
42 U.S.C. section 12132(1) .................................................................................... 11

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR   Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

Under Federal Rules of Civil Procedure Rule 12(b)(1), the Court may dismiss allegations of a Complaint where the Complaint shows an absence of subject matter jurisdiction, including lack of standing on behalf of Plaintiff. *Chandler v. State Farm* (9th Cir. 2010) 598 F.3d 1115, 1122.

Under Rule 12(b)(6), the Court may dismiss allegations of the Complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(c), the Court may require a party to clarify allegations which are "so vague or ambiguous that the [responding] party cannot reasonably prepare a response." Under Rule 12(f), the Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should all of the allegations involving activities occurring more than two years before the Complaint was filed be stricken from the pleadings as immaterial. This includes ¶¶18-58 and 70.

2. Should the claims against the Defendants not specifically named in any of the allegations outside of ¶¶18-59 and 70 be dismissed or clarified. This involves Defendants Skillman, Harvey, O'Bid, and Parker.

3. Should all of the claims under the first cause of action, entitled Violation of the Right to Freedom of Speech, be dismissed, stricken or clarified as to each or any of the Defendants.

4. Should the second cause of action, against Defendant City of Cotati, entitled *Monell* Claim, be dismissed, stricken or clarified.

5. Should the third cause of action, against unspecified Defendants, and entitled Violation of Americans with Disabilities Act, be dismissed, stricken or clarified.

6. Should the claims against the individual Defendants be dismissed on the basis of qualified immunity.

7. Should the request for punitive damages be dismissed or clarified.

///

1

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR MORE DEFINITE STATEMENT FOR COMPLAINT

Case No. 19-cv-05844-KAW

1

**BACKGROUND**

2     The Complaint seeks recovery under 42 U.S.C. section 1983 for a violation under the First

3     Amendment as well as a claim under the Americans with Disabilities Act. Complaint ¶4. Plaintiff

4     generally identifies the Defendants as the City of Cotati and various officials or employees of the

5     City. ¶8-11. Plaintiff alleges the presentation of a claim under the California Government Code,

6     which is irrelevant since only Federal causes of action are stated in this Complaint. ¶14-16.

7

**Allegations of the Complaint**

8     This Complaint, according to the Court's docket, was filed on September 19, 2019. The

9     general statute of limitations for a claim under 42 U.S.C. §1983 is two years. *Maldonado v.*

10    *Harris* (9th Cir. 2014) 370 F.3d 954-955. Therefore, claims of injury based upon events happening

11    before September 19, 2017 are irrelevant and immaterial to this case, and therefore should be

12    stricken. This involves about two thirds of the factual allegations of the Complaint.

13    Paragraphs 18-58 allege that Plaintiff's neighbor's house exploded and burned to the

14    ground, and that it took some period of time before the condition was repaired. See ¶21. This

15    event took place in June 2014. There is no allegation in the Complaint that any of the Defendants

16    were responsible for this incident. There is no allegation that the neighboring property owner was

17    the agent of any of the Defendants, or acting on their behalf. Plaintiff, of course, also does not

18    allege that she is entitled to assert the rights of her neighbor, or any other third party.

19    Because all of these allegations cannot be a basis for liability to the Defendants, they will

20    not be recited in detail. In essence, Plaintiff claims that the City did not force her neighbor to

21    clean up the damage quickly enough, and apparently the neighboring property was ultimately

22    foreclosed upon (¶40) and the foreclosing bank ended up paying for the repair. ¶41. Plaintiff

23    makes a variety of claims involving activities by third parties (e.g. former neighbors harassing

24    Plaintiff) or injuries to third parties (Plaintiff's home owner's insurer wrote off a subrogated

25    claim against the neighbor). ¶39.

26    Even if these claims were brought timely, the Complaint does not explain why Defendants

27    would be responsible for essentially any of this activity, for example, the fact that Plaintiff's

28

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT

neighbor referred to her as "retarded, psycho, and mentally ill." Complaint ¶46. There are also other, random, allegations, such as an alleged City Council rule enacted in January 2016 (¶53) and rescinded in August 2017 (¶55). All of this mishmash of claims involves various assertions of rights belonging to third parties, actions by individuals for whom these Defendants are not liable, and activities which occurred so long ago that they are no longer actionable. Interestingly, Plaintiff alleges that all of these stale claims lead to Plaintiff reducing her attendance at City Council meetings, which is the claim Plaintiff is asserting in this case. Complaint ¶57. On its face, Plaintiff has affirmatively alleged that the events which caused her purported First Amendment injury were caused by third parties and predate the last accrual date for a timely cause of action under the current Complaint.

Plaintiff begins alleging events occurring within the last two years in paragraph 59. Plaintiff alleges that Defendant John Moore wrote in a City email that Plaintiff was "bat shit crazy." ¶59. Plaintiff reports that she requested the City Council to bring "ethics charges" against Mr. Moore for this comment, but the "other council members" took no action. ¶60.

Plaintiff alleges that, in May, 2019, the City Council discussed the email, and apparently after the Council meeting, Defendant Moore "bullied" Plaintiff about the email, although what acts were taken are not identified.

At a June 2, 2019 City Council meeting, Defendant Moore read the email, apparently during the Council Meeting. ¶62. Defendant Moore then allegedly held up a copy of the email and waived it while Plaintiff was speaking, which Plaintiff took as a "threat" of future humiliation. ¶62. Plaintiff alleges that she asked Defendant DellOsso to rule Council member Moore out of order, but he did not do so. ¶62.

Plaintiff alleges that Defendant Parish, the Chief of Police, attended Council meetings when Plaintiff was present even if there was no police related agenda item, but usually did not attend otherwise. ¶64. Plaintiff alleges that, on one occasion, Parish instructed Plaintiff not to take a certain seat, but when Plaintiff insisted upon taking that seat, he allowed her to do so and stated that he did not care where she sat. ¶65. Plaintiff alleges that she interprets this behavior as an

attempt to intimidate her, and it has "impacted" her rights. *Ibid.*

Plaintiff alleges that Defendant Landman has responded to Plaintiff's posts on social media in a "degrading" manner, although the exact nature of the response is unspecified. ¶66. Plaintiff alleges that Defendant Landman is motivated by political gain and financial gain for the City. *Ibid.* Plaintiff alleges that she has requested "ethics charges" against Defendant Landman, but received no response. ¶68.

Plaintiff alleges that there has been a recent increase in "anonymous" cyber-bullying, although Plaintiff does not identify any Defendant as being responsible, nor does she identify what actions constitute the so-called cyber-bullying. ¶69.

The Complaint then turns back to activities occurring in 2014, in ¶70, which are all too stale to constitute a cause of action in this case.

Plaintiff next discusses an April, 2019 email from Plaintiff, the origins of which Plaintiff apparently denies, which email was distributed by an unspecified party, allegedly without a Public Records Act request to the City. ¶71. The Complaint does not indicate the content of the correspondence, but Plaintiff asserts that email was used by unspecified people or entities to cause Plaintiff to be banned from a website. *Ibid.* Plaintiff alleges that Defendant Landman used the email to "incite others" in some unspecified fashion, with unspecified consequences. The website apparently subsequently fully restored Plaintiff's access to the website. *Ibid.*

Plaintiff alleges that unspecified "confidential information" about Plaintiff's claim to the City, presumably meaning the Government Code claim presented to the City, was posted by unspecified or unknown individuals on the website. ¶72. Plaintiff alleges that the confidential information included the fact that the presented claim was denied by the City, although Plaintiff does not explain how this public act of denying a claim constitutes confidential information. The unidentified poster of this information allegedly characterized the claim as "laughable." *Ibid.*

Plaintiff then alleges that Defendant Landman directed unspecified other people in unspecified ways on a social media website on which Plaintiff is active. ¶73. Plaintiff alleges that she was "cyber-stalked" in an unspecified way by some unspecified person in response to

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR                    Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT

1  Defendant Landman's directions, and that "this" was done in reply to an earlier post by Plaintiff

2  mentioning City voting records. *Ibid*. Plaintiff then asserts that some or all of the alleged acts over

3  the years directed at Plaintiff and unspecified other individuals have caused harm to Plaintiff and

4  other third-parties, and are related in some unspecified way to maintaining a consensus for City

5  Council votes. ¶74.

6       The remainder of the Complaint recites the various legal causes of action.

7                         **LEGAL ARGUMENT**

8   **1.  All of the Allegations about Events Occurring before September 19, 2017 Should be**

9       **Stricken**

10      The Complaint in this action was filed on September 19, 2019. The generall statute of

11  limitations on claims under 42 U.S.C. section 1983 is two years. *Maldonado, supra* 378 F.3d at

12  954-955. Since all of these allegations relate to claims that are too stale to be the basis of a cause

13  of action in this litigation, those allegations should be stricken. These include paragraphs 8-58

14  and 70.

15      Furthermore, all of these allegations generally relate to Plaintiff's argument that the

16  Defendants were not more active in forcing Plaintiff's neighbor to fix his house after the

17  neighbor's house burned down. These allegations do not point to any First Amendment or

18  Americans with Disabilities Act claim. Furthermore, the claims appear to be claims against third

19  parties for whom the Defendants have no responsibility, or injuries to third parties for which

20  Plaintiff has no standing to assert a claim.

21      The only allegations which seem to have any relationship to any of the stated causes of

22  action is the claim that the City Council enacted some type of rule concerning public comment at

23  Council meetings in January 2016, and rescinded it in August 2017. See ¶¶53, 55. Not only is

24  there no explanation of how this generally unspecified rule is even related to a legitimate First

25  Amendment claim, it is too old to raise in the current suit.

26      Therefore, Defendants request that the entirety of ¶¶18-58 and 70 be stricken from the

27  Complaint.

28                                                  5

**2. Plaintiff Fails to State a Cause of Action for Violation of the First Amendment**

Looking to the relevant allegations of actions taking place within the past two years, Plaintiff's claim is essentially that she was referred to by a disparaging term at a City Council meeting, that the Chief of Police directed her not to sit in a particular seat at one Council meeting, although she did end up sitting in that seat anyway, and that a Defendant commented on her posts on a social media site. None of this amounts to an actionable First Amendment claim.

In essence, Plaintiff is alleging that government officials used speech unfavorable to her in response to her protected First Amendment statements. What Plaintiff suggests, without explicitly saying it, is that government officials have no protectable First Amendment rights to speak, and thus any statements by any of them of virtually any nature would constitute a violation of Plaintiff's First Amendment rights if Plaintiff personally feels offended. This argument has been squarely rejected by the Court.

> Retaliation claims involving government speech warrant a cautious approach by courts. Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves. The First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." [Citation omitted.] That marketplace of ideas is undermined if public officials are prevented from responding to speech of citizens with speech of their own.

*Mulligan v. Nichols* (9th Cir. 2016) 835 F.3d 983, 989. Because the issue raises not simply an issue of Plaintiff's First Amendment rights, but competing First Amendment rights belonging to Defendants, the Court has "set a high bar when analyzing whether speech by government officials is sufficiently averse to give rise to a First Amendment retaliation claim." *Ibid.*

In the *Mulligan* decision, Plaintiff made a Complaint that police officers, and the police union in concert with the City, accused Plaintiff of being a regular drug user, and leaked the police report of the incident along with a taped conversation in which Plaintiff admitted previous drug use. *Id.* at 988. Plaintiff characterized these activities as "a smear campaign meant to deter [Plaintiff] from preceding with his legal claim against the officers and the City." *Ibid.* The Court

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT

1    found that those allegations were insufficient to state a First Amendment retaliation claim. The

2    Court observed that a claim of defamatory statements by government officials was insufficient to

3    state such a claim absent some further act to affect a Plaintiff's rights, benefits, relationship or

4    status with the State. *Id*. at 989. The Court also held that mere threats or harsh words would not

5    be sufficient to constitute a basis for a First Amendment claim. *Ibid*. The Court concluded that

6    "[i]t would be the height of irony indeed, if mere speech, in response to speech, could constitute a

7    First Amendment violation." *Ibid*. The Court held that damage to the Plaintiff's reputation, even

8    damage that caused the Plaintiff to lose his job, was not enough to sustain a First Amendment

9    retaliation claim.

10         Other Courts have come up with the same result. For example, a Court held that public

11    scolding of a Plaintiff at City Council meetings, including name calling, and posting disparaging

12    comment and picture of Plaintiff's home, and circulating correspondence questioning the

13    parentage of one of her children, was considered "offensive, unprofessional and inappropriate,"

14    but insufficient to sustain a First Amendment retaliation claim. *Naucke v. City of Park Hills* (8th

15    Cir. 2002) 284 F.3d 923, 927-928. Similarly, false accusations that a Plaintiff had committed

16    crimes and the circulation of a report containing false and stigmatizing claims were insufficient to

17    state a claim under the First Amendment. *Colson v. Grohman* (5th Cir. 1999) 174 F.3d 498, 512.

18         Here, Plaintiff has not alleged any impairment of any of her rights by any action of the City

19    or any of its officials. Rather, she has simply alleged embarrassment that she has been

20    characterized as being "crazy." This is simply insufficient, as a matter of law, to state a claim for

21    First Amendment retaliation.

22         To the extent that the Court allows any part of this claim to stand, Defendants ask that the

23    Court order Plaintiff to clarify the uncertainties of this claim. The allegations do not clearly

24    identify the exact nature of claims made, by whom statements were made or what information

25    was produced, who responded to such information or how Plaintiff was affected. It is worth

26    noting, in this regard, that the test under the First Amendment is not whether Plaintiff herself was

27    bothered by a statement, but whether "a person of ordinary firmness" would be dissuaded from

28

1  engaging in protected speech by the activity in question. *Mulligan*, *supra*, 835 F.3d at 988.

2   **3. The Claims against Defendants Skillman, Harvey, O'Bid and Parker Should be**

3  **Dismissed or Clarified.**

4  Again, omitting the irrelevant allegations in ¶¶18-59 and 70, no factual allegations are

5  stated against Defendants Skillman, Harvey, O'Bid and Parker. Therefore, these Defendants

6  could not reasonably respond to the Complaint because they cannot identify what actions they in

7  particular were supposed to have taken that might result in their personal liability.

8  As there are no operative allegations against these individuals, the claim should be

9  dismissed. In the alternative, Plaintiff should be ordered to exactly specify each action by each

10  Defendant that serves as a basis for that Defendant's potential liability.

11   **4. The *Monell* Cause of Action Should be Dismissed or Clarified.**

12  The Supreme Court has required that a Complaint contain sufficient factual information to

13  "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* (2007) 550

14  U.S. 544, 570. The Court has also held that "bare assertions" that "amount to nothing more than a

15  formulaic recitation of the elements of a [claim]" are not entitled to "presumption of truth," and

16  that a District Court, after disregarding "bare assertions" and conclusions, must "consider the

17  factual allegations in [a] Complaint to determine if they plausibly suggest an entitlement to relief"

18  as opposed to a claim that is merely "conceivable." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 679-

19  80.

20   First, to be entitled to the presumption of truth, allegations in a Complaint … may

21  not simply recite the elements of a cause of action, but must contain sufficient
 allegations of underlying facts to give fair notice and to enable the opposing party

22  to defend itself effectively. Second, the factual allegations that are taken as true
 must plausibly suggest an entitlement to relief, such that it is not unfair to require

23  the opposing party to be subject to the expense of discovery and continued
 litigation.

24

25  *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1216. These pleading requirements apply to an

26  allegation of policy or custom for a *Monell* type claim. *Hernandez v. Tulare* (9th Cir 2012) 666

27  F.3d 631, 637.

28
8

As an initial matter, the cause of action as stated indiscriminately incorporates by reference all acts and omissions by all Defendants, without clearly specifying how each identified Defendant bears responsibility under any of the legal theories identified. Complaint ¶81. The Complaint does not identify any specific policies or practices, or identify the precise legal authority of each of the Defendants by which the City is allegedly made liable. The Complaint alleges that there are unspecified "unwritten policies" that result in a great consensus in the City Council's voting on resolutions (¶81), but fails to identify how a voting consensus is related to any relevant issue concerning alleged First Amendment retaliation or ADA violation.

Instead of alleging specific facts to attempt to establish the claim, Plaintiff offers a generic laundry list of legal relationships along with a vague reference to unspecified policies, practices, or customs. ¶¶83-84.

The Court must be assured that liability is not on a vicarious basis, or on a theory of *respondent superior*, but must be based upon the entity's own actions. *Iqbal, supra*, 556 U.S. at 676. Liability only attaches if a decision maker possesses "final authority" to establish a municipal policy with respect to the action ordered. *Collins v. San Diego* (9th Cir. 1988) 841 F.2d 337, 341. The Complaint is fatally vague as to the identity of the policy maker and the policy in question.

The omission of any critical facts makes it impossible for the City, or this Court, to properly analyze the *Monell* claim as a whole. A *Monell* claim is subject to many specific criteria and limitations, and neither the City, nor the Court, could possibly determine the nature of Plaintiff's claims based upon the vague allegations. For example, failure to investigate the basis of a subordinate's discretionary decision is not a ratification of those decisions, or creation of a policy. *St. Louis v. Praprotnik* (1988) 485 U.S. 112, 130. Acquiescence in a single or isolated instance of alleged unconstitutional conduct is also not sufficient to demonstrate a custom. See *Navarro v. Block* (9th Cir. 1996) 72 F.3d 712, 714; *Thompson v. Los Angeles* (9th Cir. 1989) 885 F.2d 1439, 1444, overruled on other grounds by *Bull v. San Francisco* (9th Cir. 2010) 595 F.3d 964. The Complaint, to the extent it alleges anything relevant to these claims, identifies only a couple of

9

isolated incidents involving the comment on Plaintiff's pronouncements by a public official, or a request that Plaintiff change her seat at a council meeting. Nothing in these allegations amounts to the establishment of a *Monell* claim.

The *Monell* claim simply fails to meet the pleading requirements in exactly the ways the Court sought to prohibit in the *Twombly* and *Iqbal* decisions. The *Monell* claim should be dismissed, stricken or clarified.

**5. The Claims for Violation under the Americans with Disabilities Act Should be Dismissed or Clarified**

Plaintiff alleges that she has a spinal cord condition which can potentially lead to temporary paralysis, and other unspecified conditions. She also alleges a mental health condition, but denies that she is mentally ill. ¶89.

Plaintiff alleges that "stress and duress" exacerbates her spinal condition and that she has asked Defendant Landman not to post negative comments on social media. ¶90. She alleges that neither Defendant Landman "nor the City" has responded to that request, and that "negative and degrading posts and publicly degrading and shaming" of Plaintiff at the City Council meetings will cause physical and emotional distress that prevents Plaintiff from "expressing my free speech" due to increased disability. ¶91.

Title II of the ADA provides that "no qualified individual with a disability shall, by a reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of any public entity, or be subject to discrimination by any such entity." 42 U.S.C. §12132. The elements of a claim that a public entity has violated Title II include that a Plaintiff allege that (1) she is a "qualified individual with a disability," (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *McGary v. Portland* (9th Cir. 2004) 386 F.3d 1259, 1265.

The first issue with the allegations of this cause of action is that Plaintiff has not adequately

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR             Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT

alleged her disability for purposes of this cause of action. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. §12102(1). Here, Plaintiff alleges that she has a "disability of a spinal cord condition that can lead to temporary paralysis." ¶89. She also alleges various unspecified "other medical conditions" and a diagnosis of PTSD, which she does not allege was known by any Defendant. *Ibid.* This vague allegation of disability does not meet the pleading requirements for qualification to make a claim under the ADA. "Plaintiff offers no factual allegations to support his claim that he was disabled, such as the type or nature of mental illness from which he suffers. Plaintiff's allegation that he has a 'mental illness,' without more, is a 'formulaic recitation of the elements of a cause of action' under the ADA and does not satisfy his pleading obligations." *Klamut v. California Highway Patrol* (N.D. Cal. 2015) 2015 WL 9024479 at *6. Not only do Plaintiff's allegations not allege a clear disability, the allegations do not establish that the condition "substantially limits one or more major life activities."

The second flaw in this cause of action is that Plaintiff fails to identify any kind of barrier to any of the public entity's services, programs or activities, or even identify which benefits are at issue. Plaintiff has alleged that negative posting on social media and negative comments have "exacerbated" her disability (¶90), but has not alleged that it has prevented her from using public facilities or participating in public entity services, programs or activities.

The third defect in the allegations is that Plaintiff has not claimed that any loss of benefits or services was because of her disability itself, but is claiming that her disability is worsened by having to tolerate the Defendants' free speech. ¶19. Plaintiff does not allege that the City is treating her in any particular way or preventing her use of facilities because of her back condition, which she claims as her disability. Rather, she is claiming that the City upsets her by expressing a response to her criticism of the City, which is not a "disability." Properly restated, Plaintiff is alleging that City employees exercised their First Amendment rights despite, allegedly, knowing that Plaintiff might become upset and might experience increased back pain. Plaintiff is thus trying to shoehorn her First Amendment claim into an ADA claim, but it simply does not fit.

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR
MORE DEFINITE STATEMENT FOR COMPLAINT

Case No. 19-cv-05844-KAW

1   Indeed, Plaintiff essentially acknowledges this ruse by alleging that the Defendants "target my

2   disabilities...so that I will physically and emotionally not be capable of expressing my free

3   speech due to increased disability." ¶91. Plaintiff essentially acknowledges that her true allegation

4   is that her free speech is the target, not her alleged back disability.

5        As a separate matter, it is only a public entity which can be the proper Defendant in an

6   ADA action, not the individual Defendants. See *United States v. Georgia* 2006 546 U.S. 151,

7   153. "Individual liability is precluded under Title II of the American with Disability Act, and

8   Plaintiff may not pursue his ADA claim against the individual Defendants named." *King v.*

9   *Hubbard* (E.D. Cal. 2009) 2009 WL 4052721 at *7. Therefore, this cause of action should, even

10  if it is properly alleged at all, be dismissed against all of the individually named Defendants.

11       6.  **The Claims Should be Dismissed on the Basis of Qualified Immunity**

12       The Defendants are entitled to qualified immunity from Plaintiff's claims because their

13  alleged actions do not violate clearly established rights. "Qualified immunity attaches when an

14  official's conduct does not violate clearly established statutory or constitutional rights of which a

15  reasonable person would have known." *White v. Pauly* (2017) 137 S.Ct. 548, 551. The first step

16  in a qualified immunity analysis is to determine whether there has been a violation of a

17  constitutional right. *Pearson v. Callahan* (2009) 555 U.S. 223, 232. In this case, as discussed

18  above, there was no violation of any of Plaintiff's rights, and by itself that is a reason for

19  dismissal of these claims.

20       However, even if the Court were to conclude that some right was allegedly violated, the

21  next step in the qualified immunity analysis calls upon the Court to determine whether "the right

22  at issue was clearly established at the time of Defendant's alleged misconduct." *Ibid.*

23       Defendants have found no case law holding that public officials are required to surrender

24  their First Amendment rights because their free speech might upset a Plaintiff. Indeed, the case

25  law cited above shows that any reasonable person would come to the exact opposite conclusion:

26  namely, that part of the price Plaintiff must pay for having free speech rights is that she must also

27  endure others also having free speech rights.

28

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT

1  As Plaintiff has not alleged facts showing violation of any right, let alone a clearly
2  established right, the individual Defendants are entitled to qualified immunity.

3  7. **The Claim for Exemplary Damages Should be Dismissed or Clarified**

4  The Complaint requests an award of exemplary damages in paragraph four of the prayer.
5  The Complaint does not otherwise appear to specifically address this request for punitive
6  damages.

7  It is appropriate to dismiss claims for punitive damages where the Complaint fails to
8  establish entitlement to recovery of such damages. See *Opperwall v. State Farm Fire and*
9  *Casualty Company* (N.D. Cal. 2018) 2018 WL 1243085, *5.

10  It is initially worth noting that defects of the entire Complaint apply to the request for
11  punitive damages. Namely, Plaintiff has failed to specifically identify which Defendant
12  committed which acts, let alone which acts constitute behavior which could justify punitive
13  damages. The claim is, therefore, fatally uncertain.

14  In addition, a claim for punitive damages cannot be asserted against a public entity. See,
15  e.g., *City of Newport v. Fact Concerts, Inc*. (1981) 453 U.S. 247, 271 ("[A] municipality is
16  immune from punitive damages under 42 U.S.C. § 1983."); *Barnes v. Gorman* (2002) 536 U.S.
17  181, 190 (punitive damages not allowed under the ADA); and see Government Code § 818.

18  With respect to the individual Defendants, as pointed out above, they cannot be sued under
19  the ADA claim, and the *Monell* claim is brought only against the City. Thus, the only claim
20  against them is the First Amendment retaliation claim. "Punitive damages may be assessed in §
21  1983 actions 'when Defendant's conduct is shown to be motivated by evil motive or intent, or
22  when it involves reckless or callous indifference to the federally protected rights of others.'"
23  *Castro v. City. of Los Angeles* (9th Cir. 2015) 797 F.3d 654, 669 (quoting *Smith v. Wade* (1983)
24  461 U.S. 30, 56). Here, at most, Plaintiff has alleged disparaging comments, including being
25  referred to by one Defendant as "crazy." Even assuming that such allegations could state a claim,
26  they do no rise to the level of offense justifying an award of exemplary damages.

27  ///

28
13

1

## CONCLUSION

2

      For all of the reasons set forth above, this motion should be granted.

3

4

Dated: November 1, 2019                   GIBBONS & CONLEY

5

6

                      By:  /s/ *Peter Urhausen*

7

                         Peter Urhausen, Esq.
                         Sean Conley, Esq.

8

                         Attorney for Defendants CITY OF COTATI
                         MICHAEL PARISH, MARK LANDMAN, JOHN

9

                         MOORE, JOHN DELLOSSO, WENDY
                         SKILLMAN, SUSAN HARVEY, DAMIEN

10

                         O'BID, VICKI PARKER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR      Case No. 19-cv-05844-KAW
MORE DEFINITE STATEMENT FOR COMPLAINT