Laurie Elizabeth Alderman
473 Maple Avenue
Cotati, CA 94931 707-795-1540
lauriealderman@yahoo.com
 Pro Se Plaintiff

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA
San Francisco

| | | |
|---|---|---|
| Laurie Elizabeth Alderman, | ) | Case No.   19-cv-05844-KAW |
|  Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | OPPOSITION TO MOTION TO DISMISS, |
|  City of Cotati, Michael Parish, | ) | CLARIFY, AND STRIKE |
|  Mark Landman, John Moore, | ) | |
|  John DellOsso, Wendy Skillman, | ) | |
|  Susan Harvey, Damien O'Bid , | ) | |
|  Vicki Parker, | ) | |
| | ) | |
| Defendants. | ) | |

As a pro se litigant, plaintiff, I once again am writing this Opposition to the Motion to Dismiss/Clarify/Strike rather informally and in first person voice.    The defendants and I stipulated to this opposition being due January 2, 2020, with a hearing date of February 6th, 2020.

<u>INTRODUCTION</u>

1.  I believe my case lends itself to having early mediation and/or amended complaint, or another court process filed that clarifies the legal issues rather than a dismissal.   This was my first time writing a federal complaint and I was focused on presenting the needed elements of the case, i.e. parties, jurisdiction, venue, etc. and in proper form. My clarification of the legal issues involved was weak….this was out of inexperience more than anything.

2.  I believe there are legal issues that should be heard in this Court, and I can achieve presenting them to the Court.   My emphasis, for example on the original complaint, was

on establishing their motives to why I was singled out from other citizens and establishing their modis operandi that has led to their unwritten policies that has led to 99% unanimous city council record for the past decade/every vote has passed in favor since 2009.

3. Perhaps, the legal issues are how they currently chill my free speech and what are the ways that are undertaken to chill my free speech with their "unwritten" policies. Maybe the legal issues should be how I am singled out, interrupted, and given less time than other citizens, for example. Or specific actions in current years where they discriminate against me based on my disability to achieve their status quo. An amended complaint, mediation, or another court process could address these issue for this rather unique situation with the city of Cotati.

4. On the face, there is something obviously unusual and different going on in Cotati than other cities. On the face, it is uniquely obvious that there is a culture that has led to "unwritten policies" with nearly every vote (99% unanimous) in favor of the agenda item, since 2009. Only 11 individual nay votes been cast since January 2009, and those items passed 4-1. Since 2003, only two items have not passed—one in 2008 and one in early 2009. All agenda items have passed during the tenures of each of the current council members since 2009. With the current council being all in office since 2013—the latest count was 710 of 717 council votes were unanimous aye votes since 2013. All council votes have been unanimous aye votes in 2018 and 2019.

5. This has led to hardly any attendance at the city council meetings, because the citizens know that their voices doesn't matter. The council will vote unanimously for the agenda item in favor, even if there is a room full of opposition, based on this history. Many council meetings in the last few years, there have been 2-3 citizens who stay for the whole

meeting…some come in for just to say their piece on one agenda item. The last council meeting had one citizen show up. Additionally, the council and city staff do not put on the agenda any item they do not want passed. We few citizens have been asking for at least 3 years for items to be put on the agenda, such as homelessness, weed abatement, senior services, to the refusal of the city to put the items on the agenda. This situation, on its face, is unique in its own right, and demonstrates the tight control the City has on financial and other decisions of the city. The City has developed many "unwritten policies" and ways of dealing with opposition to their unanimous ways, to the point of chilling free speech rights and discriminating against only those who speak out, especially if those citizens have disabilities. The city enjoys the financial benefits and political advantages of having tight control …i.e. they decide what is built in our city, which policies/laws are enforced, etc.

6. My focus for bringing this lawsuit is for injunctive relief most of all given this unique situation. If there is any monetary awarded to me individually, it would go into a special needs trust anyways for my physical disabilities. I am also in a unique position to be able to implement positive change for my community. Most people in Cotati are not able to bring a lawsuit to this court. I can because I am capable of being a pro se litigant, and because I am poor enough to be in forma pauperis. Most citizens of Cotati would have to spend a great deal of money to even get these issues before the Court.

7. I believe injunctive relief can come from this Court that would improve the quality of participation and lessen discrimination in our community and the chilling of free speech of individuals such as myself. I have good support in my community to bring this to the

Court. I am attaching a list of desired actions for injunctive relief as Exhibit 1, so that the Court knows what the focus and hopefully, the resolution to this case can be.

REPLY TO THE SEVEN LEGAL ISSUES IN THE MOTION TO DISMISS, CLARIFY, STRIKE

Legal Argument 1-Statute of Limitations.

8. When writing the complaint, I had no idea of any statute of limitations even possibly being a factor in the case. I met the pleading requirements presented in my complaint, and filed a timely complaint. I request equitable tolling in these matters.

9. The City's interpretation of my bringing the fire and explosions into account from 2014 is mis-interpreted. I did state that this was background information; that has led to the current status quo and modis operandi, especially in how the city selectively chooses to chill my free speech over others. This is also background of their patterns of wrongdoing, disrespect for laws over long periods of time, and their disrespect of the rights of those few citizens who oppose the status quo, using any means to silence opposition.

10. I am not trying to litigate the fire/explosions a stale time. I am trying to show some of the patterns and behaviors of the city council and city staff (i.e. not enforcing dozens of CA building/fire/safety codes next door for 17 months while selectively enforcing building codes against other citizens, including my family) over a time frame. During these times, my family and I were not treated as citizens with equal rights as our neighbors and anyone who supports what the city council does. The City developed patterns of behavior towards me to single me out for discrimination and retaliation that continue to the current day. That is why I wrote this background information. There are numerous actionable items that could be addressed within the statute of limitations if needed at a later time.

11. For instance, in my original complaint, I described how the implementation of the city council rules decreased the average of times I had available legally to speak, how my mode average of speaking went down from 5 comments to 3, and my attendance had dropped from March 2016 to mid-2017. Since I wasn't aware of the statute of limitations, I chose that initial timeframe, but in actuality I have an Excel Worksheet up to the current date with that data. I could present how my free speech is being chilled by what actions or affected by the council rules (that are against California's Brown Act) as warranted by these legal proceedings.

12. Also, with future proceedings, I can show the difference in actions between my speaking and mostly opposing items, and other citizens who support the city's views/status quo. I can list other actions also that are "consequences" of my opposing the City. For instance, I can give dates of certain meetings, where I am constantly interrupted on those dates during my 3 minutes by the council, where other citizens are not interrupted and then invited back to speak an unlimited amount of time up to the current date. These actionable items could be brought to light in future proceedings.

2nd Legal Argument—Fail to state a cause of action for violation of the First Amendment.

13. The essence of the city's argument is that the city has the same equal rights to free speech to criticize and respond unfavorably to my views.

14. I agree with this premise to an extent that they can freely and openly speak. However, I disagree that they have rights to single out my opposing speech and specifically target my character and use my disabilities to discriminate against me, especially when these actions they undertake targeted towards me financially and political enrich the City in many ways in reward for chilling my free speech. Plus, the City will not provide me with the same

rights as a citizen supporting their views, i.e. the council will call other citizens up for extra time, while my citizen's comment is interrupted by the council 3-4 times in 3 minutes. The City's officials in their capacity as agents of the government, are not allowed to hinder civil rights of citizens in the process. Case law also supports the Court of taking the citizens efforts to exercise their free speech rights in a "favorable light".

WITH THE MULLIGAN V. NICHOLS CASE:

15. This case started with a bad act by the plaintiff and has police involvement that led to a leaked police report, etc. This is not the case here—I did not initiate the events with a bad act. It was the City that initiated acts against me first, unlike the Mulligan case.

16. The City has done more than "mere speech in response to speech". There are more acts than just words that they have used to chill my free speech rights, i.e. disclosing of public records without public records act requests or having confidential information about my claim against the city leaked to social media. This is more than "mere speech"—there are deliberate acts against me for my speech – I know that there will be consequences in many arenas if I speak against the City.

WITH THE NAUCKE V. CITY OF PARK HILLS CASE:

17. The issue basically is what "deters a person of ordinary firmness". In the Naucke case, the case centered a series of short lived acts, mostly involving 3rd persons, i.e. the city manager threatened others employed by the city that they would lose their jobs if they didn't censure a citizen from speaking.

18. In the NAUCKE case, the Court held that the sequence of events was not enough to "chill a person of ordinary firmness from continuing in the constitutionally protected activity". In this case, there are years of events meant to chill me and other citizens who oppose the

City's unanimous ways only, not chilling citizens who support the city's views. These numerous, continual series of events is chilling me in my constitutional protected activity, not a short series of events. These years of events in this case are enough to meet the sufficient requirement of chilling a person of ordinary firmness by the pure volume of actions over time.

19. Also, this argument of "chill a person of ordinary firmness" was successfully used against the City of Cotati in another citizen's case, George Barich, in this Court in 2015. U.S. District Judge Vince Chhabria ruled that the city/police chief in his case chilled a person of ordinary firmness. So there is a history and precedent against the city with this issue of "ordinary firmness". The city has continued actions also continually since the civil rights lawsuit of George Barich in 2015, and in fact, has increased the actions, specifically targeting George Barich and me. George Barich also currently has a claim against the City of Cotati on the same issues as my case…chilling free speech and ADA discrimination. I don't know if the complaint will be filed before I submit this, or whether the City will settle with his case.

20. This precedent of the city continually chilling our free speech rights over years of the few citizens who oppose their views needs to be taken into account. Judge Vince Chhabria said he never wanted to see the City of Cotati in this Court once again about chilling first amendment rights, but here again in this Court, is my case about chilling First Amendment rights, with possibly another one soon to be heard on the same issues.

RETALIATION ISSUES BROUGHT UP IN THE 2ND LEGAL ARGUMENT

21. Again, specific current acts could be defined better in an amended complaint, mediation, or other court process. The City has engaged in a smear campaign over the last few years in order to chill my free speech in retaliation to my first amendment right to oppose their views and in retaliation for other issues, such as filing a claim against the City. Even up to today as I am writing this pleading, the City, especially Council Member Mark Landman, has engaged in a smear campaign on social media against me for 7 continual days on Nextdoor.com regarding my lawsuit and also conducting personal attacks. This smear campaign politically and financially benefits the City to continue on with.

22. Once such instance of current retaliation, was on the day I filed a complaint against the City in June, 2019. Council Member John Moore, engaging the whole council in a discussion without an agenda item present at that evenings council meeting, again, publicly called me "Bat Shit Crazy" and waved the folder with a copy of his city email to others, at me any time I tried to speak later in the meeting. This caused me to have to regroup, to direct him not to wave the email at me, and decreased the amount of time I had available to speak. I suffered significant emotional distress because of his actions and the complicity of the council to allow these actions, including increased physical disability because of the incident. This retaliatory act for filing my claim, plus other retaliatory acts can be delineated during further proceedings.

3rd Argument --- Damages not clear.

23. There are a few issues in play here. One is that I focused on the damage to our community, i.e. the 99% unanimous vote record and the City's "unwritten policies", rather than on the personal harm. I did so because my intent with this lawsuit was/is to focus on injunctive relief to

the benefit of my community, rather than on monetary damages (which would go in a special needs trust for my physical disabilities anyways).

24. Also in play here is that my status as a person with a disability as far as harm and damages. With a non-disabled person, it is much easier to quantify/delineate damages and harm, i.e. lost wages. With my being disabled, the harm "looks different", but is still there. There is harm to my reputation, my future earnings, my emotional state, and increased physical disabilities due to emotional distress. This harm issue could be delineated and supported better in an amended complaint, mediation, or another court process. I met the pleading requirements for timely presenting the possibility of harm in my complaint.

Legal Issue #4—Claims against Skillman, Harvey, O'Bid, and Parker Should be dismissed or clarified:

25. Defendants Skillman, Harvey and O'Bid have been complicit in the acts to chill my free speech rights, ADA discrimination and retaliation with all the individual defendants. The City has a duty under Monell to supervise, control, etc. the individual defendant's actions as employees of the City. For example, the defendants have been complicit with an obvious code of conduct violation, the "bat shit crazy" email, written on John Moore's city email account and distributed to many others. I asked repeatedly for these ethics charges to be brought against the council member at every city council meeting for a year. None of the council members will say a word and are complicit in events aimed at chilling my free speech. If a council member is mayor, they do not rule the council member out of order, despite my pleas. Instead, the defendants continue on in their smear campaign against me, by all being complicit when publicly I am again once called "bat shit crazy" and the email is discussed without an agenda item present…at a time when I have no rights to respond.

26.   The City council has an "unwritten policy" to address issues directed toward my public comments, when I don't have rights to speak, even when the council members are out of order.   All individual defendants are complicit in these unwritten policies.   Not a word is said by the individual defendants to control any disruption, personal attack or Brown Act violation by a council member or council members.

27.   In return, if I blurt out in my normal tone of voice, a one-sentence comment that is critical, I receive admonishment the mayor for "disrupting the flow" of the meeting.   In comparison, the council member out of order can be off-agenda for ten minutes with personal attacks, yet they are not given any admonishment by the mayor for their behavior.

28.   Damien O'Bid, as city manager, contributes to the complicity with the "unwritten policies", i.e. For instance, he cites incorrectly what the policy is, not based in law or code, at council meetings when it is being talked about as an off-agenda item   Then Mark Landman cites Damien O'Bid as his source on city policy on social media, when in actuality it is an unwritten city policy that is presented to the public.    Damien O'Bid and the other City defendants routinely and habitually cut out public input into the process this way, specifically mine.    These defendants are all complicit and benefit politically, which financially benefits the City's coffers, by these actions at the cost of chilling my opposing speech. .

29.   I agree that Vicki Parker's role in this complicity is stale, considering she left her employment a year ago with the city.   She would be left out of future legal proceedings.

LEGAL ISSUE #4—MONELL CLAIM.

30.  The Monell claim was filed so that the Court could decide what the individual acts versus the city's acts and responsibility to oversee, train, etc., were. I did not expect this to be an issue until

much later in the case.     I met the pleading requirements to bring the Monell Claim issue into the case proceedings.

31.   I also have some confusion on this issue is due to the nature of some acts, and whether they were the City's acts or the individual defendant's acts.   This would only be supported in the discovery phase of this complaint to my understanding.   For example, when council member Landman wrote disparaging comments about my views on a hotel project and incited others on Nextdoor.com  (a "neighbor" private social media site), a few times in July 2019, I asked explicitly if he was posting comments as an agent of the city on a matter of subject jurisdiction of the city, or as a neighbor/private citizen on the social media cite.  I emailed all the council members and city staff with this question, his disparaging comments and/or his publishing an "unwritten policy" to no reply from anyone, so the City was aware of my questions of it being a city or individual act.   The City and individual defendants had a duty to oversee, control, supervise, under Monell, but didn't.

32.  .   The question of the City's liability as far as a Monell claim also continues to the current day, as even with the complaint filed, the City has not addressed at all the actions that are leading to a claim under Monell.

33.  In recent months, there continues to be issues on how the Monell claim should proceed because of a couple of actions, even after the complaint was filed, showing the complete disregard that legal issues in this case are before the Court.    One is that I cited two facts on social media (Nextdoor) in November, 2019.   One was that the City of Cotati last held weed abatement hearings in April, 2008 on its weed abatement code.   Then, I cited the link to the city weed abatement code.   This was a post initiated by me.    Mark Landman then wrote multiple posts, cited city staff, various legal arguments, etc.    This was holding what should have been an agenda item in council chambers as an item to discuss on social media.

34.  Despite my only citing two facts, by the end there was an unwritten policy publicized to the citizens of the area, that the Rancho Adobe Fire District had responsibility for weed abatement, not the City.  This circumvented public comment and other agencies input, as it has been an issue between the fire district (separate entity) and the City since at least 2012.     Council Member Landman degraded my input in his smear campaign against me in order to do City business on social media in this incident once again, when all I had posted was two facts, the last weed abatement hearing date in 2008 and the city's weed abatement code link.

35.  During this, I emailed all posts to the city council members and numerous city staff.     I also emailed the city attorney and the city's attorney in my case.   I asked that Mark Landman not be able to write city policy on social media once again, especially because this was an issue before this Court. I didn't receive a reply from anyone, including the city's representation.   This is the complicity in these acts meant to chill my free speech, and the city's negligence to supervise, monitor and control actions of an individual council member, which has to do with the Monell claim

34.  Then recently, this happened once again in mid-December.   I wrote a post asking citizens to please request that the city council and city staff give us citizens a update on a hotel project.   The hotel project passed the planning commission in early May, and not a word has been provided when it will come the council, have public hearings, or needs any other steps before construction done.  We citizens who attend the council meetings have asked repeatedly for an update on the hotel project, to not one word in or out of council chambers in 7 months.

35.  I, once again, informed all of the council members and city staff and both attorneys of what was being posted by Mark Landman.     The attention changed to the city's social media policy.   Mark Landman cited that the city attorney had ruled that he could write anything he wanted on social media even if it had to do with the subject matter jurisdiction of the city.   He used emails from city staff to

support his position that he was not violating the social media policy. He incited a predictable few of his loyal followers to divulge this court case on Nextdoor towards me in his and the City's smear campaign. . I wrote everyone in the city, the attorneys and posted that this was an issue that was in Court presently. I asked emailed the defendants and the City eight times asking that issues that are in this Court not be played out in social media, while I was also being smeared for posting. The posts from Mark Landman continued, and the City and the individual defendants did not reply to a single email. His personal attacks even said I was causing the city and the community harm. For seven days of a continual smear campaign has gone on….which is enough to chill any reasonable person from posting on a "neighborhood" personal social media website, only to be personally smeared and city business done for seven days..

36. . I asked the city council members, city staff, city attorneys to intervene to not let Mark Landman once again write unwritten policies not in the council chambers and publish them to the city. I have repeatedly asked for this issue to be an agenda item in council chambers for the last year, and the city has refused to make it an agenda item. The City refuses to put these issues on the agenda.

37. Add to this, after this Court case was revealed on the social media post on the hotel project, the chair of the city's planning commission posted negative comments against me and my court case. With this post and multiple influences by those in the City, I had to threaten filing a motion to ask for an injunction to cease and desist with this Court, to have these posts by all city staff, commissioners, and council members stop, which were interfering in an open court case. Having other city commissioners also involved, would chill any reasonable person from this free speech.

38. This happened in full view of the city council members, the city staff, and the attorneys in this case. This is where the Monell case should be considered as part of my case.

Legal Issue #5—ADA Claim

FIRST ISSUE WITH THIS CAUSE OF ACTION:

39.  I am known to the City and all the individual defendants to have an established disability under the Americans with Disabilities Act.   I have asked for and received ADA accommodations in the past five years, i.e. adjustable furniture.  I have expressed at council meetings and in emails to the council and city staff, that I have post-traumatic stress disorder and that I am not mentally ill on numerous occasions, and the harm of being painted as mentally ill/psycho does to me emotionally on numerous occasions also.   The City is quite aware of all of my disabilities, including physical disabilities through my correspondence with the city and personal interactions with city staff…this is something their attorney on this case would not be aware of when he wrote on this legal issue.

SECOND ISSUE WITH THIS CAUSE OF ACTION:

40.  The city has created barriers to participation as my being a qualified disabled person, but the barriers are not physical barriers easy to see.      One such action the city council and city staff take is after 3 hours of city council meeting time passing (10 p.m.), the city council rules mandate that they take a vote on continuing with the meeting or tabling some agenda items until the next meeting. Every time this has happened, the council has not tabled any items until the next meeting, not discussed the agenda, and unanimously voted to continue past 10 p.m.

41.   During public comment on the item to go past 10 p.m., I numerous times have stated that this was unreasonable to continue considering my known disabilities and medical conditions.   I state that I won't be fully able to participate because of my disabilities and medical conditions—either that I am more severely affected by my disabilities after 3 hours that limit will limit my abilities to fully participate (my disability effects my speech after that length of time) or that I will need to leave the meeting early to deal with the effects of 3 hours of meeting time.

42.   The defendants  have not once had a discussion on whether they should limit the timing or modify the agenda items of the meeting due to my inability to participate fully after 3 hours because of my disabilities and medical conditions.    I end up having to leave because of this barrier, which limits my ability to speak and give public input.   One of the major times we are allowed to speak is at the end of the meeting (non-action items), so I miss out on that opportunity to speak because of the barriers put up in disregard to my disabilities.   My participation/access to equal participation in city council meetings are and have been impacted and the effects of the city council meeting rules/their unanimous "unwritten" policy to continue every time, are used to discriminate against me to the current day.    This is just one of the actionable items in the barriers the city presents to my exercise of free speech and involvement as my non-disabled peers.

3RD ISSUE OF THIS CAUSE OF ACTION

43.  First, to make it clear, I do not have a "back" condition as written in the motion.  I have severe spinal cord compression in the cervical region (C2-C6) than can lead to temporary paralysis from the neck down.  The defendants are all quite aware that the level of emotional stress/duress I am under can led to this paralysis.    Yet, they continue intentionally with actions targeting this medical condition to limit my ability to participate in giving my public input in many arenas.

44.  For example, with the recent Nextdoor.com post on the hotel, there was information given by a city staffer that satisfied what the status of the hotel project was, without a post by Mark Landman. Then Mark Landman started posting comments about the social media policy, making initially a personal comment against me and the content of the hotel post.   I then wrote him, all the council members, city staff and the city's attorney, explaining that I was in a major flare-up of my spinal cord condition and asked that the City intervene to stop Mark Landman from more posts, given that they all know that additional stress can make my paralysis worse.

45.    None of the council members, city staff, or the attorneys intervened in my request for there to be no more posts, designed to publish an unwritten policy (social media policy) inappropriately on the social media forum.    Mark Landman continued on, despite knowing I was paralyzed and not able to respond to his posts because of paralysis.    He wrote numerous other posts personally attacking me after I had stated I was experiencing paralysis, which led to increased stress and duress.    Mark Landman especially, but with the complicity of the council and city staff, use my medical conditions and disabilities to their advantage to silence me caused by barriers created involving my disabilities. The defendants cause additional emotional duress by targeting my disabilities.    I then cannot fully participate as a non-disabled person could, and this should be addressed by this Court.

46.    I agree with the city's assertion that the individual defendants cannot be held to the ADA claim—this was again a legal issue that I wasn't aware of when initially writing the complaint.    I have met the pleading requirements in my original complaint, regarding the possibility of an ADA claim.

Legal Issue #6 – Qualified Immunity

47.    My lack of knowledge of the legal processes involved with qualified immunity will show with this legal issue.    My understanding of qualified immunity is that the Court decides whether the city is legally responsible or not, who is financially responsible, as well as it is decided whether the individual defendants acted on their own accord, and are therefore not qualified for immunity.

48.    With the Barich v. the City of Cotati, et al. case in 2015, U.S. District Judge Vince Chhabra decided the question of qualified immunity against Cotati's Chief of Police in his decision.    Again, this is an issue I presumed to happen much later in the legal proceedings of my case against the city and the individual defendants.    This is an issue that might be able to be clarified in further actions by this Court or in mediation if necessary.    I met the pleading standard on this item.

Legal Issue #7—Exemplary damages.

49.  Again, I was not aware that exemplary damages could not be granted in an ADA claim against a public entity.    I filed a timely complaint, met the pleading requirements on this issue.    This issue and related damages, and delineation of what ADA vs. Civil Rights claim actions should be done at a future proceeding.

CONCLUSION AND PRAYER

For all of the reasons stated above, I pray for the following:

1.  That the motion to dismiss/clarify/strike be denied.

2.  That I be granted the ability to write an amended complaint (or by another court-ordered action or process) that addresses the legal issues mentioned in this opposition to the motion, and addresses those issues that need clarification.

3.  That this case be allowed to proceed, hopefully to early mediation, given my focus, and the Court's stated focus of sending injunctive relief cases to early mediation, based on the greater need of injunctive relief for the sake of the community rather than the need for monetary damages in this case.


___electronically signed by Laurie Alderman on 12/20/2109      _____

Laurie Alderman

**Exhibit 1**

Example of corrective injunctive relief that could be ordered/stipulated:

 Here are some of my ideas.

1. More commissions. A temporary commission such as the "public input improvement commission"....this would spawn a teen commission, a senior citizens advisory committee, a police advisory commission, etc., whatever the citizens wanted.

All commission members would have expiring terms. Right now they are appointed by a council member and have unlimited terms, like Supreme Court justices. Then, the presentation of the people seeking appointments need to be taken out of the council's hands, i.e. a high school civics class would choose which applicant is recommended and presented to the council for a commission . Also, the public input commission would have significant pull on what agenda items are put on the city council agenda, i.e., frequently requested agenda items by the citizens, i.e. weed abatement, senior services, homeliness, rather than the status quo of the city only putting on the agenda items they want to be passed.

2. A process be added that when there is a ethics charge by a citizen against a council member, i.e. the "bat shit crazy" city email, that it has to be heard by the council as an agenda item. Right now, the council members have to bring ethics charges against each other, which they will not do.

3. They enforce the social media policy, appoint someone who can give city information. If a council member is doing city business on social media, they have to make a statement whether or not  they are not representing the city. There would need to be a method to discipline a council member for violating the social media policy.

4. Quarterly meetings for the Measure G Citizens Oversight Committee, and that they have more pull on how the Measure G monies are spent. Right now, they meet once a year, don't even look or debate about how the Measure G monies are being spent. They passed their annual approval within an hour last time unanimously, led through the process only by input from the city manager, Damien O'Bid. There were no citizens in the audience, only the appointed committee members.

5. An outside review of whether the current city council rules/agenda procedure are in compliance with the Brown Act and the ADA. Discipline actions need to be established for council members who constantly break the Brown Act, i.e. make "speeches" not on the agenda about other items.

6. No more "special meetings" in the police community room that are not televised or webcast, or in a ADA accessible room. Budget and strategic planning meetings have at least 72 hours headway between publishing the agenda packet and the meeting. Currently, it can be as little as 24 hours. Also, any meeting materials, i.e. power point presentations, at the budget and strategic planning meetings, be available to the general public during and after the meeting.

7. The minutes of all meetings go from action minutes to more narrative minutes, like in the past or what Rohnert Park has. Right now, all the minutes say is that citizens commented....it doesn't even say we citizens supported or didn't support an agenda item. Knowing what the citizens said is important!!

8. That there be specific guidelines on how much time a citizen is allowed to speak at public comment, and the consequence of interruptions by council members to the allotted time. There could

be specific rules on the time limit....i.e. if there were less than 5 citizens in attendance or wanting to speak on the agenda item, the citizens could have 5 minutes rather than 3 minutes as a time limit.

9. A procedure that if it is looking like the council meeting will be going more than 3 hours, that at an earlier time, i.e. 9:30 p.m., the council reviews what items are to be continued to the next meeting, etc. Right now, at 10 p.m. they take a vote, always unanimous, to continue the meeting past 10 p.m. Sometimes George and I can't stay or tolerate physically anything after 10 p.m., so we need to leave, and there is no public comment on the agenda for the last few items.

10. The "correction plan" needs to be promoted and the reasons why it is being implemented known to the public, i.e. their unanimous vote percentage and their passage of every agenda item for 11 years and that they only put agenda items on that they want passed.

11. The public on Nextdoor needs to be informed of how Nextdoor's limited government use policy and the need for city officials to delineate personal views vs. the city's views when posting on social media. A public information official would be appointed to provide information first hand from the city without any personal bias.

12. The Court would order that no retaliatory acts, such as publishing and distributing public records without a PRA request and/or confidential information be released in order to chill their willingness to speak out, against any individual targeted for such treatment, such as I am targeted.

13. That the Court order that building projects of significant importance, i.e. the hotel project, the memory care/assisted living center next to Hwy 116 proposals be fully publicized for public hearing /comment dates, etc instead of buried in the city's website. Plus, with these public hearings, they provide notice, i.e. postcards, to all affected individuals within one mile of the building projects instead of the minimally legally required noticing.

14. That the city Community Development department keep up to date the list of building projects and their status, schedule of public hearings, etc. . Right now, the list in stale and six months old, and doesn't reflect decisions and actions in the last six months.

15. That the City implement a public workshop on increasing public participation and public input, and the City address any issues brought up by the citizens present.