Peter Urhausen Esq. SBN 160392
Sean Conley Esq. SBN 130814
GIBBONS & CONLEY
3480 Buskirk Ave., Suite 200
Pleasant Hill, CA 94523
T: 925.932.3600
F: 925.932.1623

Attorney for Defendants CITY OF COTATI, MICHAEL PARISH, MARK LANDMAN, JOHN MOORE, JOHN DELLOSSO, WENDY SKILLMAN, SUSAN HARVEY, DAMIEN O'BID, VICKI PARKER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE ELIZABETH ALDERMAN,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF COTATI, MICHAEL PARISH, MARK LANDMAN, JOHN MOORE, JOHN DELLOSSO, WENDY SKILLMAN, SUSAN HARVEY, DAMIEN O'BID, VICKI PARKER.<br><br>　　　　Defendants. | Case No. 19-cv-05844-KAW<br>Assigned to: Magistrate Judge Kandis A. Westmore<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A SUPPRESSION/GAG ORDER AGAINST INDIVIDUAL DEFENDANT IN THE CASE**<br><br>Action Filed: September 19, 2019 |

1

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION　　　　　　　　　Case No. 19-cv-05844-KAW

**INTRODUCTION**

The entirety of Plaintiff's case is an offense to the First Amendment. Plaintiff's entire claim, currently the subject of a motion to dismiss, is based upon the theory that Plaintiff's discomfort of criticism justifies stripping Defendants of their First Amendment rights.

Plaintiff now compounds this attack upon the First Amendment by proposing a prior restraint on future First Amendment expression by one of the Defendants, and by implication, all of the Defendants in this case. This request is unsupported by any factual or legal justification, and betrays Plaintiff's true interest, to use this Court's process to rob Defendants of their First Amendment rights merely because Plaintiff dislikes being criticized.

**PLAINTIFF'S MOTION FOR "GAG ORDER"**

No declaration accompanies Plaintiff's motion. Therefore, there is absolutely no evidence whatsoever before the Court on this motion. Instead, Plaintiff offers arguments about purported facts. The absence of any evidentiary support is, by itself, sufficient reason for this Court to deny this motion.

Plaintiff argues that one of the Defendants made a comment on social media that Plaintiff interpreted to refer to Plaintiff, and implies that others would recognize such a connection. In particular, Plaintiff argues that a statement was made that there has been some history of "angry, disgruntled negativity" from individuals possessing "personal vendettas against this community." Neither this case nor Plaintiff's name is ever mentioned anywhere in this posited email, and the only connection to Plaintiff is Plaintiff's own self-identification as the creator of the angry, disgruntled negativity. There is also a reference to unspecified other communications involving other people, which is not only unsupported by evidence, but would constitute hearsay. In any event, there is neither evidence nor even argument about who received such comments or understood them to be some kind of reference to Plaintiff.

Plaintiff asserts, again without any evidence, that this public posting of an opinion by one of the Defendants will "influence the community in my case." On the basis of this threadbare

assertion, Plaintiff makes the outrageous request that the Court order a prior restraint on any future public statement by this Defendant, and by implication all of the Defendants, concerning Plaintiff "or the content of this federal case." It is worth noting that Plaintiff has not sought to have the entire file in this case placed under seal, meaning that this entire case is a matter of public record, and is a matter upon which any citizen is entitled to comment.

## **POINTS AND AUTHORITIES**

The motion is devoid of fact and context. Plaintiff, as self-described in the complaint, is a public critic of the operations and decisions of the Cotati City Council. Plaintiff treasures her First Amendment right to issue such criticism, but is so offended by contradiction that she seeks to muzzle Defendants, who are employees or elected officials of the City, and in derogation of their First Amendment rights. In this motion, she seeks government sanctioning of this repression by way of a court order placing a prior restraint on Defendant Mark Landman from public statement about Plaintiff "or the content of this federal case."

Plaintiff seeks to strike at the very core of protected First Amendment interests, by placing a prior restraint on any speech about a public matter (a publicly filed lawsuit) and a self-reported public figure, Plaintiff.

> "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' " *Snyder v. Phelps,* 562 U.S. 443, 452, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (quoting *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 [Pentagon Papers] (1964)). "The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 339, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
>
> At the same time, First Amendment rights are not absolute and do not automatically override all other constitutional values. See *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 570, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) ("We reaffirm that the guarantees of freedom of expression are not an absolute prohibition under

all circumstances, but the barriers to prior restraint remain high and the presumption against its use continues intact."). Government limitations on speech are subject to varying levels of scrutiny depending upon such factors as substance of the speech and limitations involved. Strict scrutiny is reserved for speech implicating core concerns of the First Amendment. *Republican Party of Minn. v. White,* 536 U.S. 765, 774–75, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). Our Supreme Court has held repeatedly that both prior restraints and content-based restrictions are subject to strict scrutiny.

Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n,* 427 U.S. at 559, 96 S.Ct. 2791; *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) ("chief purpose of the (First Amendment's) guaranty [is] to prevent previous restraints upon publication"). The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) ("Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.") A system of prior restraints "bear[s] a heavy presumption against its constitutional validity," and the Government "carries a heavy burden of showing justification for the imposition of such a restraint." *Capital Cities Media, Inc. v. Toole,* 463 U.S. 1303, 1305, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983) (citation omitted). In order to justify a prior restraint, the government must demonstrate that the restraint is justified without reference to the content of the speech, and is narrowly tailored to serve a compelling governmental interest. See *Nebraska Press Ass'n,* 427 U.S. at 571, 96 S.Ct. 2791; *Forsyth Cty., Ga. v. Nationalist Movement,* 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

Similarly, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.,* ___ U.S. ___, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227 (citing *Sorrell v. IMS Health, Inc.,* 564 U.S. 552, 564, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011)); *Consol. Edison Co. of New York v. Pub. Serv. Comm'n,* 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) (government regulation "may not be based upon either the content or subject matter of speech."); *Berger v. City of Seattle,* 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc) (restriction "is content-based if either the underlying purpose of the regulation is to suppress particular ideas or if the regulation, by its very terms, singles out particular content for differential treatment.").

*Twitter, Inc. v. Sessions* (N.D.CA 2017) 263 F.Supp.3d 803, 809-810. Here, Plaintiff requests

both prior restraint and content-based restraint, triggering the most stringent level of review for any type of assault on First Amendment rights.

In *In re Dan Farr Productions* (9th Cir. 2017) 874 F.3d 590, one litigant obtained "suppression orders" prohibiting the other litigant from publicly expressing its views of the pending litigation, from publishing public documents related to the dispute, and compelling the adverse party to publish a "disclaimer" containing the court's suppression order. *Id*. at 591. The moving party there, as in the present case, sought this order in the name of protecting the integrity of the litigation. *Id*. at 592. The Court of Appeals struck all of these orders as violations of the party's First Amendment rights, holding that "[t]he orders at issue are unconstitutional prior restraints on speech. They prohibit free speech that poses neither a clear and present danger nor a serious and imminent threat to [the litigant's] interest in a fair trial." *Id*. at 593.

Unlike the present case, it appears that some evidence was offered by the moving party in the *Farr* case. Evidence was offered of widespread dissemination of the relevant information, reaching potentially thousands, or tens of thousands, of people, and generating "more than 200,000 media articles reporting on the instant case." *Ibid.* The court, however, noted that there was no evidence specifically connecting the speech in question with the relevant jury pool. *Id.* at 594. In particular, no facts were presented indicating that the communications would reach a substantial portion of the relevant jury pool, which might result in the inability to find an adequate number of unbiased jurors. *Ibid.* The court cited *Hunt v. NBC* (9th Cir. 1989) 872 F.2d 289, which found that a pretrial broadcast likely to reach more than 20% of all adults in a relevant area was not widespread enough to interfere with the court's ability to assemble an untainted jury pool. Here, Plaintiff has not identified how many people, if any, may have been exposed to the purported statement, let alone how many would have recognized Plaintiff as being the target of such a statement. The jury pool for the Northern District of California is drawn from the adult population of 15 counties and numbers in the millions. Nothing on this record comes close to suggesting the Court will not be able to find an adequate number of impartial jurors.

An additional factor to consider in a request for a restraint on a litigant's free speech rights is whether the subject matter is "lurid or highly inflammatory," in a way that would disproportionately intrigue the public. *Id.* at 594 – 595. The *Farr* Court offers examples typically involving violent criminal mischief, and distinguishes those type of cases from typically bland civil lawsuits. Here, Plaintiff's civil suit about having to endure criticism for her comments about City Council operations clearly falls within the less 'intriguing and captivating' public discourse.

One more factor to consider is whether the jury pool is from a small and rural community, or from large and populous metropolitan sources. *Id*. at 594 – 595. The *Farr* decision held that "pretrial publicity is less likely to threaten the fairness of trial in a large metropolitan area." *Id.* at 595. San Mateo County, one of the counties forming the jury pool for the Northern District of California, is cited as an example of such a metropolitan area. Of course, this District also includes San Francisco, Oakland and San Jose, three of the largest metropolitan areas in the country. As the *Farr* decision aptly put it, "this case is simply not one of the rare instances in which pretrial publicity mandates prior restraints." *Id*. at 594.

The *Farr* decision goes on to note that a court would be required to find the least restrictive means to ensure a fair trial, short of a prior restraint on the litigants' First Amendment rights. In particular, voir dire, proper jury instructions and, if necessary, sequestration, would also be available lesser remedies to protect a jury pool. *Id*. at 595 – 596. Again, nothing in the moving papers suggests that, even if there is any risk to the jury pool, lesser remedies would be inadequate.

## **CONCLUSION**

This motion is frivolous. Plaintiff makes no attempt to present the Court with any competent evidence whatsoever. Further, the foundation of the motion is the legally unsupportable request that a litigant suffer a prior restraint on any comment about Plaintiff or this public litigation. Further, the speech Plaintiff complains about is fairly innocuous and does not even address this case. The request is repugnant to the Defendants' First Amendment rights, and

Plaintiff makes absolutely no legitimate effort to justify the request.

On its own motion, this Court should in some way sanction Plaintiff for filing this clearly frivolous motion, for which there is neither factual nor legal basis, and which resulted in unnecessary expense to the Defendants and waste of Court resources. We understand that Plaintiff is *pro se* and proceeding *in forma pauperis*, but that should not be license to make frivolous filings.

Dated:   January 21, 2020         GIBBONS & CONLEY

By: /s/ *Peter Urhausen*
PETER A. URHAUSEN, ESQ.
Attorney for Defendants CITY OF COTATI, MICHAEL PARISH, MARK LANDMAN, JOHN MOORE, JOHN DELLOSSO, WENDY SKILLMAN, SUSAN HARVEY, DAMIEN O'BID, VICKI PARKER