1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

7   LAURIE ELIZABETH ALDERMAN,          Case No.  19-cv-05844-KAW
8                    Plaintiff,          **ORDER GRANTING IN PART AND**
                                         **DENYING IN PART DEFENDANTS'**
9              v.                        **MOTION TO DISMISS**
10  CITY OF COTATI, et al.,              Re: Dkt. No. 14
11                   Defendants.

12

13          On September 19, 2019, Plaintiff Laurie Elizabeth Alderman filed the instant action

14  against Defendants, asserting violations of her free speech rights and the Americans with

15  Disabilities Act ("ADA").  (Compl., Dkt. No. 1.)  Pending before the Court is Defendants' motion

16  to dismiss, strike, and for a more definitive statement of the complaint.  (Defs.' Mot. to Dismiss,

17  Dkt. No. 14.)

18          Upon review of the moving papers, the Court finds this matter suitable for resolution

19  without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below,

20  GRANTS IN PART and DENIES IN PART Defendants' motion.

21                          **I.      BACKGROUND**

22          Plaintiff is a resident of Defendant City of Cotati ("City").  (Compl. ¶ 7.)  Defendant

23  Michael Parish is the City's Police Chief; Defendants Mark Landman, John Moore, John

24  DellOsso, Wendy Skillman, and Susan Harvey are the City's elected city council members;

25  Defendant Damien O'Bid is the City's City Manager, and Defendant Vicki Parker was the City's

26  Community Development director until January 2019.  (Compl. ¶¶ 9-11.)

27          In June 2014, the home of Plaintiff's neighbor exploded and caught on fire, resulting in

28  toxic contamination to the area.  (Compl. ¶¶ 21-25.)  Plaintiff alleges that the City failed to

adequately respond, despite Plaintiff informing staff and the city council of her neighbor breaking city and state codes.  (Compl. ¶¶ 24, 27.)  In October 2014, Plaintiff began attending city council meetings regarding issues around the fire.  (Compl. ¶ 34.)  In June 2015, Plaintiff began to participate in other issues before the city council, mostly to oppose the issues and resolutions before the council.  (Compl. ¶ 34.)

Plaintiff alleges that in response, Defendants began to retaliate against her by "paint[ing] her] as mentally ill."  (Compl. ¶ 33.)  For example, at a July 2015 city council meeting, Defendant O'Bid read a response from the local District Attorney, declining to intervene with respect to the fire.  (Compl. ¶ 35.)  Plaintiff asserts that this was embarrassing and was used by her neighbors to retaliate against her.  (Compl. ¶ 35.)  Plaintiff further alleges that in August and November 2015, the City allowed Plaintiff's neighbors to make personal attacks against her character at city council meetings, including suggesting that Plaintiff was mentally ill.  (Compl. ¶¶ 39, 42-46.)

In December 2015, Plaintiff complained to Defendant Parker about how workers were being exposed to the contaminated soil at the neighbor's site.  (Compl. ¶¶ 48-49.)  Plaintiff asserts that Defendant Parker repeatedly called her "psycho" and that she was "telling stories."  (Compl. ¶ 49.)  Plaintiff then went to a city council meeting; when Plaintiff continued to speak past the time limit, Defendant Skillman spoke over her before ordering Defendant Parish to remove her from the chambers and threaten her with arrest.  (Compl. ¶ 51.)

In January 2016, the city council changed the rules to further limit the time available for citizens to speak.  (Compl. ¶ 53.)  The city council also adopted rules in March 2016 that required the mayor to announce to the public when a citizen was receiving additional time as a disability accommodation.  (Compl. ¶ 56.)  Plaintiff asserts that this rule violated the ADA and discouraged her from attending meetings.  (Compl. ¶¶ 55-56.)  The rule was rescinded in August 2017. (Compl. ¶ 55.)

In July 2018, Defendant Moore wrote an e-mail on his city account to Plaintiff and other city council members and staff, calling Plaintiff "bat shit crazy."  (Compl. ¶ 59.)  At every city council meeting between July 2018 and May 2019, Plaintiff requested that the other city council members bring ethics charges against Defendant Moore, but they did not do so.  (Compl. ¶ 60.)  In

2

United States District Court
Northern District of California

1   May 2019, the city council discussed Defendant Moore's e-mail during the meeting.  (Compl. ¶

2   61.)  After the meeting, Defendant Moore took a public record of the e-mail off a display wall,

3   cornered Plaintiff, and "bullied [her] about the city email."  (Compl. ¶ 61.)

4          On July 2, 2019, Plaintiff filed a claim with the City over the chilling of her free speech

5   rights.  (Compl. ¶ 62.)  At the city council meeting that day, Defendant Moore again read his July

6   2018 e-mail.  (Compl. ¶ 62.)  When Plaintiff tried to speak, Defendant Moore would lift up his

7   copy of the e-mail and wave it at her as a threat of further humiliation.  Plaintiff asked Defendant

8   DellOsso to rule Defendant Moore out of order, but he did not.  (Compl. ¶ 62.)

9          Plaintiff also asserts that Defendant Parish uses intimidation to chill her speech and

10  expression.  (Compl. ¶ 64.)  Specifically, she states that when she or George Barich attend city

11  council meetings, Defendant Parish will also attend even if there is not a police agenda item.

12  When he attends, Defendant Parish is armed and in full uniform.  If neither Plaintiff nor Mr.

13  Barich attends, Defendant Parish will usually not attend.  (Compl. ¶ 64.)  Additionally, in April

14  2018, Defendant Parish told Plaintiff she could not sit in an accessible chair.  (Compl. ¶ 65.)

15  Plaintiff told him to check with the city attorney, and then went to pick up an agenda.  When she

16  returned, Defendant Parish was standing within a foot of her seat.  Plaintiff told him he did not

17  have the right to tell her where to sit and to check with the city attorney.  She sat down and

18  Defendant Parish said that he "didn't really care where [she] sat."  (Compl. ¶ 65.)

19         Plaintiff further alleges that Defendant Landman has "repeatedly gone on social media and

20  degraded my posts about city issues and has incited others against me," mostly by replies to

21  Plaintiff's posts on Nextdoor.com.  (Compl. ¶ 66.)  Plaintiff asserts Defendant Landman does so in

22  violation of the City's social media policy.  (Compl. ¶ 67.)  Plaintiff has requested that ethics

23  charges against Defendant Landman as well, but charges have not been brought.  (Compl. ¶ 68.)

24  Plaintiff contends that as a result, there has been a "dramatic increase in 'anonymous cyber-

25  bullying' against" her, using specific details about her claim and e-mails to the City.  (Compl. ¶

26  69.)  Plaintiff also asserts that Defendant Landman directed others on social media to a website

27  Plaintiff writes on, and that she was "cyber-stalked" by someone as a result.  (Compl. ¶ 73.)

28         Plaintiff also alleges that the City has a history of distributing her e-mails to others without

3

a public records act request being made.  (Compl. ¶ 70.)  For example, in April 2019, an e-mail supposedly sent by Plaintiff to City staff and the city council, which included full names of neighbors on Nextdoor.com, was distributed without a records request.  (Compl. ¶ 71.)  The e-mail was used to ban Plaintiff from Nextdoor.com, and by Defendant Landman to "incite others on social media for the last few months . . . ."  (Compl. ¶ 71.)  Plaintiff's access to Nextdoor.com has been restored since.  (Compl. ¶ 71.)  Additionally, confidential information about Plaintiff's claim against the City was posted in July 2019, and called "laughable."

Plaintiff believes that "[t]hese incidents are related to keeping the status quo of a culture of 99% unanimous votes/all resolutions passing favorably for five years by the city council and planning commission, by chilling [her] and other citizen's rights to free speech . . . ."  (Compl. ¶ 74.)

Finally, Plaintiff asserts that Defendants are aware that she has a disability, including a spinal cord condition that can lead to temporary paralysis and post-traumatic stress disorder ("PTSD").  (Compl. ¶ 89.)  Plaintiff alleges that Defendants also know that stress and duress exacerbates her spinal cord medical condition, and believes that Defendants are targeting her disabilities by posting negative and degrading posts, as well as by degrading and shaming Plaintiff in public at the city council meetings, so that Plaintiff will be physically and emotionally incapable of expressing her free speech.  (Compl. ¶ 91.)

On September 19, 2019, Plaintiff filed the instant action, bringing claims for: (1) deprivation of the freedom of speech, in violation of 42 U.S.C. § 1983; (2) *Monell* liability against the City for chilling Plaintiff's exercise of free speech; and (3) violation of Title III of the ADA. On November 1, 2019, Defendants filed the instant motion to dismiss.  On December 20, 2019, Plaintiff filed her opposition.  (Pl.'s Opp'n, Dkt. No. 25.)  On January 23, 2020, Defendants filed their reply.  (Defs.' Reply, Dkt. No. 36.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250

F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

If the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

#### A.   Motion to Strike

Defendants request that the Court strike all allegations regarding events that occurred before September 19, 2017 – specifically paragraphs 8-58 and 70 – because any claims based on

these events would be barred by the statute of limitations.  (Defs.' Mot. to Dismiss at 5.)

Plaintiff responds that she does not seek to litigate the 2014 explosion and fire, but provides such information as background.  (Pl.'s Opp'n at 4.)  Plaintiff explains that it was during this time that "[t]he City developed patterns of behavior towards [her] to single [her] out for discrimination and retaliation that continue to the current day."  (*Id.*)  As to other events, such as the implementation of the city council rules decreasing the time citizens had to speak, Plaintiff appears to "request equitable tolling."  (*Id.* at 4-5.)

Plaintiff provides no basis for equitable tolling.  Moreover, as discussed below, Plaintiff's § 1983 claim for violation of her free speech rights must be dismissed.  The Court, however, DENIES Defendant's motion to strike these allegations.  Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Here, although events occurring before September 19, 2017 may not be actionable, they are background information that explain why Defendants behaved towards Plaintiff in a certain way.  Thus, they are not "redundant, immaterial, impertinent, or scandalous."

### B.    First Amendment Violation

"To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action."  *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).

Here, Defendants argue that Plaintiff cannot state a claim because the complained of actions, including calling Plaintiff "crazy" in public and responding negatively to her posts on-line, is insufficient per *Mulligan*.  (Defs.' Mot. at 6-7.)  There, the Ninth Circuit explained that "[r]etaliation claims involving government speech warrants a cautious approach by courts.  Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duty.  It also ignores the competing First Amendment

United States District Court
Northern District of California

6

rights of the officials themselves." *Mulligan*, 835 F.3d at 989.  Thus, the courts have "set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim." *Id.*

In general, "public officials may not deny or deprive a person of a governmental benefit or privilege on a basis that infringes her or his freedom of speech." *Hyland v. Wonder*, 972 F.2d 1129, 1134 (9th Cir. 1992).  Such "public benefits" include public employment, promotions or transfers, welfare benefits, unemployment benefits, and tax exemptions. *Id.* at 1135. Significantly, the Supreme Court has made clear that "damage to reputation is not actionable under § 1983 unless it is accompanied by 'some more tangible interests.'" *Patton v. Cty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  The Ninth Circuit has further found that "the constricture of *Paul* . . . cannot be avoided by alleging that defamation by a public official occurred in retaliation for the exercise of a First Amendment right." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994).

Applying this principle, the *Mulligan* court found that a First Amendment violation was not established where the police accused the plaintiff of being a drug user, and leaked to the media the police report and a tape of the plaintiff admitting to drug use.  835 F.3d at 988.  While the Ninth Circuit acknowledged that the plaintiff's "reputation was undoubtedly damaged," and that he had lost his private sector job, "such reputational harm is not actionable under §1983 unless it is accompanied by some more tangible interests." *Id.* at 989 (internal quotation omitted).  In other words, this "act of defamation by government officials was insufficient to create a right to a remedy under the First Amendment" because the defendants "did not make any decision or take any state action affecting [the plaintiff's] rights, benefits, relationship, or status with the state." *Id.*

Such is the case here, where Plaintiff alleges that Defendants have attacked her reputation in an attempt to silence her.  Insulting her in public and leaking information, while problematic as a matter of common courtesy, is not alone sufficient to establish a First Amendment violation. Plaintiff must allege that the defamation was accompanied by impact to more "tangible interests," such as public employment or unemployment benefits. *Contrast with Greisen v. Hanken*, 925 F.3d 1097, 1114 (9th Cir. 2019) (finding that the plaintiff could establish a First Amendment

retaliation claim where he suffered both defamation and a suspension, indefinite leave, a one-sided gag order, and the instigation of three spurious investigations); *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1302-03 (9th Cir. 1999) (finding that the plaintiff could establish a First Amendment violation where the police officers made false accusations of criminal activity against the plaintiff's members, resulting in arrests and search warrants).

The Court notes that in *Mulligan*, the Ninth Circuit rejected the "proposition that speech by government officials can *never* give rise to a claim of First Amendment retaliation in the absence of a loss of tangible rights or government benefits." 835 F.3d at 989 n.5. For example, "informal measures, such as the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation, can violate the First Amendment also." *Id.* While Plaintiff does allege that a councilmember threatened to have her arrested, she admits that the threat was made after she kept speaking past her allotted time. Thus, any such threats were not made in retaliation for her speech, but, rather, to enforce the time limit.

Accordingly, the Court GRANTS Defendants' motion to dismiss the free speech claim. The dismissal is without prejudice, as it is not clear to the Court that Plaintiff cannot allege sufficient facts. Any amendment, however, must allege more than reputational harm,[1] whether by identifying affected tangible interests or a threat of arrest or legal action.[2] Because the Court dismisses this claim, the *Monell* claim that is based on the constitutional violation likewise fails and must be dismissed. The Court also need not consider Defendants' arguments regarding qualified immunity and exemplary damages, as both only apply to Plaintiff's constitutional claim.

## C.   Americans with Disabilities Act Violation

Finally, Defendants seek dismissal of the ADA claim. The Court finds that the ADA claim

---

[1] For example, Defendant Moore reading or threatening to read her email publicly, or allowing other speakers to comment about her in meetings, is mere reputational harm, and does not give rise to a viable claim.

[2] The Court also notes that with respect to Defendants Skillman and Harvey, Plaintiff asserts that they are complicit in chilling her free speech because they do not stop the other councilmembers from speaking against Plaintiff. (Pl.'s Opp'n at 9-10.) It is not clear Plaintiff can establish a First Amendment violation based solely on their failure to act. Likewise, Plaintiff argues that Defendant O'Bid incorrectly cites to policies. (*Id.* at 10.) Again, it is not clear this could establish a First Amendment violation.

United States District Court
Northern District of California

1    must be dismissed because Plaintiff brings her claim under Title III, which concerns *private*

2    entities that operate places of public accommodation.  42 U.S.C. § 12181(7).  Plaintiff's claim

3    should have been brought under Title II, which applies to public entities.  *See* 42 U.S.C.

4    §12131(1).

5           Further, it is not clear Plaintiff has alleged a claim under Title II against the City.[3]  To

6    establish a Title II violation, a plaintiff must allege: "(1) he is an individual with a disability; (2)

7    he is otherwise qualified to participate in or receive the benefit of some public entity's services,

8    programs, or activities; (3) he was either excluded from participation in or denied the benefits of

9    the public entity's services, programs, or activities, or was otherwise discriminated against by the

10   public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his

11   disability."  While it appears Plaintiff has identified her disability of a spinal cord condition and

12   PTSD, it is not entirely clear Plaintiff has identified a barrier that prevents her from participating.

13   On its face, it seems Plaintiff alleges that the defamation exacerbates her spinal cord condition,

14   which affects her ability to speak at city council meetings, but Plaintiff does not make that

15   connection in her complaint.  (*See* Pl.'s Opp'n at 15; Compl. ¶¶ 90-91.)  And even if she did, she

16   appears to contend that Defendants' comments about her in response to her public comments or e-

17   mails should not be permitted because it causes her stress, which exacerbates her disability.  This,

18   however, would conflict with the public official's competing First Amendment rights, which

19   would require more than a reasonable accommodation. Plaintiff's own allegations suggest that she

20   has not been prevented or excluded from speaking or otherwise participating.

21          Further, Plaintiff's opposition appears to focus on the timing of the city council meetings,

22   which can go past 10:00 p.m.  (Pl.'s Opp'n at 14.)  These facts are not alleged in the complaint,

23   nor is it clear Plaintiff could establish a Title II claim based solely on when a city council meeting

24   is held.

25                              **IV.    CONCLUSION**

26          For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART

27

28   ───────────────
     [3] Plaintiff concedes that Title II claims cannot be brought against the individual Defendants.  (Pl.'s
     Opp'n at 16; *see* 42 U.S.C. §12131(1).)

                                           9

United States District Court
Northern District of California

Defendants' motion to dismiss.  Defendants' motion to strike Paragraphs 8-58 and 70 is DENIED.

Defendants' motion to dismiss Plaintiff's claims is GRANTED.  Plaintiff may file an amended

complaint consistent with this order by **February 28, 2020**.  The failure to timely file an amended

complaint may result in the dismissal of this action.

In amending her complaint, Plaintiff may wish to contact the Federal Pro Bono Project's

Help Desk for assistance—a free service for pro se litigants—by calling (415) 782-8982.

IT IS SO ORDERED.

Dated: February 4, 2020

KANDIS A. WESTMORE
United States Magistrate Judge