UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE ELIZABETH ALDERMAN, <br> Plaintiff, <br> v. <br> CITY OF COTATI, et al., <br> Defendants. | Case No. 19-cv-05844-KAW <br><br> **ORDER GRANTING MOTION TO DISMISS** <br> Re: Dkt. No. 42 |

Plaintiff Laurie Elizabeth Alderman filed the instant case against Defendants, asserting violations of her free speech rights and the Americans with Disabilities Act ("ADA"). (Compl., Dkt. No. 1.) Pending before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint. (Defs.' Mot. to Dismiss, Dkt. No. 42.)

On Plaintiff's request, the Court vacated the hearing on this motion. (*See* Dkt. Nos. 46, 51.) Having reviewed the parties' filings and the relevant legal authority, the Court GRANTS Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff is a resident of Defendant City of Cotati ("City"). (First Amended Compl. ("FAC") ¶ 8.) Defendant Michael Parish is the City's police chief; Defendants Mark Landman, John Moore, John DellOsso, and Wendy Skillman are the City's elected city council members; and Defendant O'Bid is the City's City Manager. (FAC ¶¶ 11-13.)

As discussed in more detail in the Court's prior dismissal order, this case concerns Plaintiff's participation in city council meetings. (*See* Dismissal Ord., Dkt. No. 37.) Plaintiff alleges that Defendants have retaliated against her opposition to building projects that Defendants have a great financial interest in by, for example, interrupting Plaintiff during her speaking time,

insulting her during meetings and on Nextdoor.com, failing to provide adequate police services or weed abatement, attempting to prevent her from sitting in a particular chair, threatening Plaintiff with arrest at a June 2018 meeting when she spoke outside her given time, failing to prevent "cyberstalking" by Christopher Kren Mora, being less diligent in responding to her Public Records Act requests, and inciting people to report Plaintiff to Nextdoor.com. (*See* FAC ¶¶ 64, 66-68, 81, 83, 87, 89, 90, 98, 105, 106, 111.)

Plaintiff also alleges that she is disabled, as she has physical disabilities, post-traumatic stress disorder ("PTSD"), and a speech disability. (FAC ¶ 115.) Plaintiff asserts that Defendants "target" her disorders by interrupting her while she is speaking. (FAC ¶ 116.) Additionally, Plaintiff asserts that the City holds budget and strategic planning meetings in the police community room, rather than in the council chambers. (FAC ¶ 118.) Unlike the council chambers, the police community room does not have a sound system or microphones. (FAC ¶ 119.) The only two citizens who attend the meetings are George Barich and herself, and Mr. Barich has a hearing impairment. (FAC ¶ 120.) Mr. Barich and Plaintiff have requested that the meetings be held in the council chambers, but Defendants continue to hold the meetings in the police community room. (FAC ¶ 120.)

On September 19, 2019, Plaintiff filed the instant case, asserting violations of her First Amendment right to free speech and Title III of the ADA. (Compl., Dkt. No. 1.) On November 1, 2019, Defendants moved for dismissal. (Dkt. No. 14.) On February 4, 2020, the Court granted Defendants' motion to dismiss with leave to amend. (Dismissal Order at 8-9.)

On February 29, 2020, Plaintiff filed the operative complaint. On March 19, 2020, Defendants filed the instant motion to dismiss, as well as a request for judicial notice. (Req. for Judicial Notice ("RJN"), Dkt. No. 42-1.) On March 31, 2020, Plaintiff filed her opposition, which did not include any legal argument. (Pl.'s Opp'n, Dkt. No. 46.) Rather, Plaintiff's opposition stated that she "believe[d] that [she had] presented enough arguments in previously filed papers that [her] case should not be dismissed and be allowed to proceed further . . . ." (*Id.* at 2.) On April 1, 2020, Defendants filed their reply. (Defs.' Reply, Dkt. No. 48.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

If the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

#### C.   Request for Judicial Notice

First, Defendants request that the Court take judicial notice of a video recording of the June 26, 2018 city council meeting.  (RJN at 1.)  In her complaint, Plaintiff alleges that she was threatened with arrest by Defendant Landman when she "said three sentences out of order."  (FAC ¶ 89.)  The video shows Plaintiff speaking from the audience while the city council is speaking, resulting in Defendant Landman giving her multiple warnings.  It does not appear Defendant Landman threatens to arrest her, instead stating, "I don't wish to arrest you, but this is a second warning."  Defendant Landman ultimately recesses the meeting for fifteen minutes.

Second, Defendants request that the Court take judicial notice of a July 2018 e-mail chain.  (RJN at 2.)  In her complaint, Plaintiff alleges that Defendant Moore called her "bat sh*t crazy" in this e-mail.  (FAC ¶ 91.)  The initial e-mail of the chain is a public comment by Plaintiff, challenging the meeting agenda and describing the meeting with over forty adjectives.  (RJN, Exh. 1 at 2-3.)  Defendant Moore responds to Plaintiff, "You forgot bat-sh*t crazy."  (*Id.* at 1.)

1    Plaintiff does not oppose the requests for judicial notice.  The June 26, 2018 recording is a
2 true and correct copy of an official public record, whose authenticity is capable of accurate and
3 ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See*
4 Fed. R. Evid. 201(b).  The July 2018 e-mail chain is referenced in the complaint, and its
5 authenticity is not in dispute.  The Court GRANTS judicial notice of both documents to show
6 what was said; the Court does not take judicial notice as to the truth of the matters asserted therein.

### D.    Motion to Dismiss

#### i.    First Amendment Violation

As explained in the Court's previous order, "[t]o state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016). Because the instant case also concerns "the competing First Amendment rights of the officials themselves," there is "a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim." *Id.* at 989.

In the initial complaint, Plaintiff alleged that Defendants attacked her reputation in an attempt to silence her.  The Court, however, explained that "[i]nsulting [Plaintiff] in public and leaking information, while problematic as a matter of common courtesy, is not alone sufficient to establish a First Amendment violation." (Dismissal Ord. at 7.)  Rather, "Plaintiff must allege that the defamation was accompanied by impact to more 'tangible interests,' such as public employment or unemployment benefits." (*Id.*)  In the alternative, Plaintiff could allege an adverse action such as "a threat of arrest or legal action." (*Id.* at 8.)

Having carefully reviewed Plaintiff's complaint, the Court finds Plaintiff has not alleged an impact to a tangible interest.  First, facts regarding Defendants insulting or reprimanding Plaintiff during meetings and on Nextdoor.com or Facebook, failing to prevent and/or enabling Mr. Mora's alleged "cyberstalking," and encouraging people to report Plaintiff on Nextdoor.com

all concern reputational harm, which is insufficient to establish a First Amendment retaliation claim. (FAC ¶¶ 75-76, 90, 95, 100-101, 105, 107-12.) Plaintiff's allegations that this reputational harm affected her ability to get paralegal work, or that being reported on Nextdoor.com resulted in her being temporarily banned and unable to access messages from prospective employees, are also insufficient. In *Mulligan*, the Ninth Circuit found no First Amendment violation where the police accused the plaintiff of being a drug dealer and leaked a tape of the plaintiff admitting to drug use. 835 F.3d at 988. Although these actions damaged the plaintiff's reputation and cost him his private sector job, the Ninth Circuit explained that this "act of defamation by government officials was insufficient to create a right to remedy under the First Amendment" because the defendants "did not make any decision or take any state action affecting [the plaintiff's] rights, benefits, relationship, or status with the state." *Id.* Such is the case here, where Plaintiff alleges that she lost work in the private sector, not with the government.

Second, while Plaintiff alleges inadequate police services or weed abatement, Plaintiff does not allege any facts showing these actions resulted from her speech. (*See* FAC ¶¶ 78-84.) Indeed, Plaintiff alleges that former police officers confirmed that "for a decade, there had only been 1-2 officers on duty at a time usually," and that "the last time the City enforced its weed abatement code was in 2008." (FAC ¶¶ 80, 83.) Thus, the alleged inadequate services existed *prior* to Plaintiff's participation in city politics, which started after June 2014. (FAC ¶ 30.)

Third, Plaintiff alleges that she has received the same response from Defendant O'Bid to any e-mail that she sends, while Mr. Mora gets more substantive responses. (FAC ¶ 104.) Plaintiff cites no authority that she is entitled to a more fulsome response from Defendant O'Bid, or that his responses could be considered "governmental services." Similarly, Plaintiff asserts that Mr. Mora obtained a more timely response to a PRA request than Plaintiff received to her request. (FAC ¶ 106.) Plaintiff, however, does not allege that the response to her request was inadequate, or that it violated the requirements of the PRA. The fact that another citizen may obtain quicker responses does not necessarily affect Plaintiff's rights, benefits, relationship, or status with the state.

Likewise, Plaintiff has also not alleged a threat of arrest or legal action. The only threat of

arrest Plaintiff points to is the June 2018 meeting, when Defendant Landman allegedly threatened to arrest Plaintiff for speaking out of order. (FAC ¶ 89.) As the Court previously noted, Plaintiff admitted she was speaking past her allotted time, and thus "any such threats were not made in retaliation for her space, but, rather, to enforce the time limit." (Dismissal Ord. at 8.) Moreover, upon review of the June 2018 meeting, it does not appear Defendant Landman threatened to arrest Plaintiff at all. Similarly, while Defendant Parish allegedly tried to "intimidate" Plaintiff from sitting in an ADA-accessible chair, there are no allegations he threatened arrest or legal action. (FAC ¶ 87.)

Accordingly, the Court finds that Plaintiff has failed to allege a First Amendment violation. As this is Plaintiff's second complaint, and there is no indication Plaintiff can allege sufficient facts to state a cognizable claim[1], the Court GRANTS Defendants' motion to dismiss the First Amendment claim **with** prejudice.

### ii.   Americans with Disabilities Act

In Plaintiff's original complaint, Plaintiff alleged that Defendants violated the ADA by deliberately exacerbating her spinal cord condition. (*See* Compl. ¶¶ 90-91, Dkt. No. 1.) Plaintiff now alleges that Defendants violated the ADA on two alternative grounds.

First, Plaintiff alleges that she is interrupted during her speaking time in an attempt to increase her speech difficulties. (FAC ¶¶ 116.) Plaintiff, however, does not allege that these actions prevent her from participating. Plaintiff also alleges that non-disabled citizens are not interrupted and are invited to speak again on the same agenda item. (FAC ¶ 117.) Plaintiff alleges no facts that suggest Defendants treat her differently *because* of her disability; the allegation that she is treated differently is alone insufficient.

Second, Plaintiff alleges that Defendants violate the ADA by holding meetings in the police community room, which lacks an adequate sound system, making it difficult to hear what is being said. (FAC ¶¶ 118-119.) These facts do not support an ADA claim because Plaintiff has

---

[1] The court again notes that Plaintiff did not file a substantive opposition to the motion to dismiss, stating that her previous arguments were sufficient. Therefore, the court concludes that any additional arguments Plaintiff may have in opposition to the motion are waived.

1 not alleged that holding meetings in the police community room prevents her from participating
2 due to **her** specific disabilities.  Rather, she alleges that the police community room's inadequate
3 sound system affects Mr. Barich's ability to hear.  (FAC ¶¶ 120-21.)  An injury to Mr. Barich,
4 however, is insufficient to demonstrate an ADA violation as to Plaintiff.

Accordingly, the Court finds Plaintiff has again failed to allege an ADA claim.  In light of Plaintiff's multiple pleadings, as well as Plaintiff's failure to file a meaningful opposition, the Court GRANTS Defendants' motion to dismiss the ADA claim with prejudice.  Because the Court finds that Plaintiff's substantive claims must be dismissed with prejudice, the Court need not consider Defendants' remaining arguments regarding *Monell* liability, qualified immunity, or punitive damages.

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss with prejudice.

IT IS SO ORDERED.

Dated: July 2, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge